**UNITED STATES, Appellee,**

v.

**Terry BROWN, Specialist Four, U.S. Army, Appellant.**

**No. 55,822,**
**CM 448251.**

U.S. Court of Military Appeals.

May 31, 1988.

For Appellant: *Captain ,Stephen W. Bross* (argued); *Colonel Brooks B. La-Grua, Major Dale K. Marvin, Captain Kathleen A. VanderBoom* (on brief); *Lieutenant Colonel Paul J. Luedtke.*

For Appellee: *Captain Brendan F. Flanagan* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Byron J. Braun* (on brief).

### Opinion of the Court

SULLIVAN, Judge:

In October 1985, appellant was tried by a military judge sitting alone as a general court-martial at Fort Benning, Georgia. Contrary to his pleas, he was found guilty of involuntary manslaughter and assault consummated by a battery upon a child under the age of 16, in violation of Articles 119(b)(1) and 128(a), Uniform Code of Military Justice, 10 U.S.C. §§ 919(b)(1) and 928(a), respectively. Appellant was sentenced to a dishonorable discharge, confinement for 34 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in a short-form opinion.

This Court specified the following issue for review:

WHETHER, AS A MATTER OF LAW, THE EVIDENCE IS SUFFICIENT TO PROVE THAT APPELLANT WAS GUILTY OF THE OFFENSES OF WHICH HE STANDS CONVICTED.

We hold, based on the evidence of record, that a rational factfinder could have concluded beyond a reasonable doubt that appellant was guilty of involuntary manslaughter and the assault. *See generally Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Harper*, 22 M.J. 157 (C.M.A.1986).

Appellant was found guilty of killing by culpable negligence his natural son, Terry Brown, Jr., and of beating his 7-year-old stepson, Alton. His wife, Jacqueline Brown, testified to the events of June 6, 1985, which surrounded the death of her 5-week-old boy. They included a period of exclusive custody by appellant and a high pitched scream by the baby during this time. She also testified that appellant's prior play with this child included shaking the child and throwing him in the air. Appellant essentially confirmed this testimony. In addition, Alton testified concerning his observations on the night in question. Various doctors testified to the physical condition of the baby that night and statements made by appellant and his wife. Finally, other doctors, including one who performed the autopsy, offered their expert opinions that violent shaking caused the baby's death. There was, however, no eyewitness testimony that appellant committed a negligent act which caused the death of his son.

Mrs. Brown also testified that appellant whipped Alton with a belt and a switch causing welts and bruises. Appellant admitted striking the boy with a belt several times as discipline for the boy's misconduct.

I

Appellant initially argues that the evidence admitted at his trial was not sufficient to permit the trier of fact to find him guilty beyond a reasonable doubt of involuntary manslaughter under Article 119(b)(1). He particularly asserts that it was not adequately proved that he did any act which caused the death of his son. *See*

para. 44*b* (2), Part IV, Manual for Courts-Martial, United States, 1984. Assuming it was, he further argues that there was no proof his lethal act was culpably negligent. *See* para. 44*c* (2)(a)(i). We disagree.

Dr. Wright, who performed the autopsy on the body of appellant's son, testified that the cause of death was "subdural and subarachnoid hemorrhage caused by nonaccidental trauma." He opined that these hemorrhages are caused by the "shaking of a child" with significant force. Dr. Adams, a neurologist who had earlier examined the "CAT" scan results of the victim's head, concluded that the injuries to the victim's brain were caused by the violent shaking of the child and probable blows to his head. The testimony of appellant's wife established that her baby was in good health prior to the period of appellant's exclusive custody of him on the night of June 6, 1985. She also testified that the baby was in a state of physical collapse when he was returned to her by appellant later that night. His son, Alton, also testified that appellant "jiggle[d]" the baby that evening in an attempt to stop him from crying. Finally, Dr. Basilio testified that appellant said he had raised the child above his head and moved the baby side to side prior to his collapse. Appellant admitted the same in court.

In view of this medical testimony, the evidence of appellant's exclusive control of the baby, and his admissions concerning his handling of the child immediately prior to the collapse, a rational inference could be drawn beyond a reasonable doubt that appellant's violently shaking this child caused his death. *See United States v. Hart*, 25 M.J. 143, 147 (C.M.A.1987). *Woodrum v. State*, 498 N.E.2d 1318, 1324 (Ind.App.1986); *State v. Evans*, 77 N.C. App. 31, 327 S.E.2d 638 (1985), *aff'd*, 317 N.C. 326, 345 S.E.2d 193 (1986); *Jones v. State*, 580 P.2d 1150 (Wyo.1978). Moreover, in view of the severity of the bodily injuries and the evidence of prior negligent

conduct by appellant,* a reasonable inference could be drawn that the charged acts were done at the very least with culpable negligence. *United States v. Baker*, 24 M.J. 354, 356 (C.M.A.1987); *United States v. Jackson*, 20 M.J. 68 (C.M.A.1985).

## II

Turning to the second part of the specified issue, appellant asserts that the evidence of record showed that his actions toward Alton were justified by his parental duty to administer discipline to his stepson. *See generally* R.C.M. 916(c), Manual, *supra*. In this regard, we note that Model Penal Code § 3.08(1) (A.L.I.1985) states that the use of force by parents or guardians

is justifiable if:

\* \* \* \* \* \*

(a) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and

(b) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation ....

Essentially, appellant asserts that the prosecution did not prove beyond a reasonable doubt that his motivation was other than didactic or that the force employed for this purpose was unreasonable. *See generally* R.C.M. 916(b).

In the instant case, we note that the evidence showed that Alton did the misconduct for which he was punished, *i.e.*, he stole a quarter from his teacher's desk. Moreover, appellant and his wife testified that the punishment was administered for disciplinary purposes. However, there was some evidence that appellant disliked his stepson and vented his hostility on occasion. Moreover, there was testimony that he was angry on the day of the assault because of his work details. A reasonable

---

\* No objection to this evidence was lodged by the defense under Mil.R.Evid. 404(b). *See United States v. Mann*, 26 M.J. 1 (C.M.A.1988).

factfinder could have rejected appellant's benign explanation for his conduct and inferred an improper motive for these beatings. *See United States v. Baker, supra; United States v. Williams,* 21 M.J. 360, 362 (C.M.A.1986).

■ With respect to reasonableness, a similar conclusion lies. In the instant case, the punishment was severe enough to produce welts and bad bruising on the 7–year-old child. Moreover, numerous blows (3–4) were administered to the child and each one produced a physical reaction. This is some evidence which could support a finding of unreasonable conduct in the present case. *See generally United States v. Jackson, supra* at 70.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.