**UNITED STATES, Appellee,**

v.

**Sergeant Patrick J. SCOFIELD, 558–15–8281, United States Army, Appellant.**

**ACMR 9002811.**

U.S. Army Court of Military Review.

30 Oct. 1991.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Tamela J. Armbruster, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before NAUGHTON, HOWELL, and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSTON, Judge:

Consistent with his pleas, the appellant, a sergeant with eighteen-and-one-half years of service, was convicted by a military judge sitting as a general court-martial of two specifications of assault consummated by a battery on his children who were under the age of sixteen, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1982) [hereinafter UCMJ]. The adjudged sentence included a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to the grade of Private E1. The convening authority approved only so much of the sentence to confinement as provides for confinement for ten weeks, and otherwise approved the sentence.

Although the case was submitted to us by appellate counsel without assigned error, we specified the following issue:[1]

WHETHER THE MILITARY JUDGE ESTABLISHED DURING THE PROVIDENCY INQUIRY AN ADEQUATE FACTUAL BASIS FOR THE UNLAWFULNESS OF THE ASSAULT CONSUMMATED BY A BATTERY IN LIGHT OF *United States v. Brown*, 26 M.J. 148 (C.M.A.1988), AND THE PROVISIONS OF § 3.08(1) OF THE MODEL PENAL CODE.

The charges in this case resulted from the alleged excessive disciplinary action taken by the appellant against his children. The appellant's eight-year-old son repeatedly came home late from school. After other disciplinary measures had no effect,[2] the appellant spanked his son between six and ten times on the buttocks and thighs with a leather belt. The appellant's seven-year-old daughter stole earrings from a baby sitter and lied to her parents about the incident. When she failed to respond to other corrective measures, the appellant spanked her in a similar manner. Based on the bruises the children received from the

---

1. Because we have disposed of the case on the basis of the affirmative defense of justification, we need not discuss two additional issues specified, i.e.:

 WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT DURING SENTENCING BY ADMITTING TESTIMONY ABOUT AN ALLEGED INCIDENT OF CHILD ABUSE THAT OCCURRED NINE YEARS PRIOR TO TRIAL.

 WHETHER THE APPROVED SENTENCE WAS APPROPRIATE.

2. Prior to spanking his son, the appellant had spoken with him about his misconduct, sent him to bed early, and withdrawn certain privileges.

spankings, the appellant plead guilty to two specifications of assault consummated by a battery upon a child under sixteen years.

After carefully considering the record, we have concluded that during the providence inquiry the military judge failed to establish that the appellant used unlawful force when he disciplined the children.

## I.

The law has clearly recognized the right of a parent to discipline a minor child by means of moderate punishment. R. Perkins & R. Boyce, *Criminal Law* (3rd ed. 1969); *Campbell v. Commonwealth*, 405 S.E.2d 1, 4 (Va.App.1991) (a parent has a right to punish a child within the bounds of moderation and reason); *Gibson v. Gibson*, 3 Cal.3d 914, 92 Cal.Rptr. 288, 292, 479 P.2d 648, 652 (1971) (a parent may spank a child who misbehaved without being liable for battery).

Professors LaFave and Scott have written that a parent may punish a child for wrongdoing and not be guilty of a battery if the punishment is inflicted for the purpose of safeguarding or promoting the child's welfare, and if the punishment thus inflicted is not excessive in view of all the circumstances (including the child's age, sex, health, the misconduct on the present occasion and in the past, the kind of punishment inflicted, and the degree of harm done to the child thereby). W. Lafave & A. Scott, *Handbook on Criminal Law* 389–390 (1972).

In one of the few recent military cases that directly addresses the issue, *United States v. Brown*, 26 M.J. 148 (C.M.A.1988), *review denied*, 27 M.J. 18 (C.M.A.1988), the court applied provisions of the Model Penal Code to determine whether an accused's parental duty to administer discipline could justify whipping his stepson with a belt and switch, causing welts and bad bruises. The court noted that the Model Penal Code

§ 3.08(1) (1962) provides that the use of force by parents is justifiable if:

> (a) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and
> (b) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation....

Thus, the court in *Brown* applied a legal standard that addresses two related issues: (a) proper motive (*i.e.*, parental purpose); and (b) moderate force. In that case, the evidence revealed that the accused disliked his stepson, vented his hostility on occasion, and was angry on the day of the assault. The court determined that the evidence was sufficient for the finder of fact to conclude that the accused did not have a proper motive for his actions.[3]

a. Proper Motive (parental purpose).

Section 3.08 of the Model Penal Code provides justification for the use of force against a child based upon the parent's belief in the propriety or necessity of its use as a preventive or corrective measure.

 Whether the parent acts out of concern for the child's welfare or for an impermissible reason is a question of fact based upon all the circumstances of the case. In this case, there was no stipulation of fact. Consequently, the colloquy with the military judge must be examined to determine whether there is a sufficient factual basis for the plea.[4]

ACC: ... Around the middle part of April, I was having behavioral problems with my [natural] children. Patrick [age eight] and Melanie [age seven] were having difficulties adhering to the standards of behavior that I was attempting to impose on them.... Patrick, basically, after severl [sic] incidents of coming home late from school, just would not

---

**3.** Specialist Brown was also convicted of involuntary manslaughter for the death of his five-week-old son caused by violent shaking.

**4.** The statements of an accused must be accepted at face value in the providence inquiry. *United States v. Williams*, 21 M.J. 360 (C.M.A.1986); *United States v. Jemmings*, 1 M.J. 414 (C.M.A.1976).

adhere to coming home on time. After speaking with him about it and trying to influence his behavior through various punitive measures like going to bed early; withdrawal of privileges, I felt that I had to discipline him to get him to understand that he should comply, you know. On several occasions he came home late so I decided that it was time for me to spank him....

MJ: As a parent, of course, you're entitled to use reasonable discipline for your children if they commit acts of misbehavior and things of that nature. And a parent, of course, is lawfully entitled to do a certain amount of disciplinary correction. Reasonable standards, of course, apply.

ACC: Yes, sir....

MJ: All right. What about Melanie?

ACC: In Melanie's case, she had stolen some earrings from my baby sitter. And after trying to discuss it with her, I tried to get her to solve the problem by finding the earrings rather than punishing her for it. For two days I had her search for the earrings. On Friday evening when I got home from work, she still hadn't found the earrings and it just appeared to me that she wasn't concerned about it. It was, "Well, I lost the earrings. No big deal." At that time, I sat down and discussed with her why I was going to spank her; because she had stolen something and lied to me about the intent and circumstances surrounding the theft of the earrings. I wasn't angry with her; I was disappointed with her behavior, or angry with her behavior. So I decided at that time that spanking her was a reasonable punishment for stealing and lying.

The appellant stated numerous times to the military judge that his actions toward his two children were based solely upon parental concern. His comments to the military judge during the providence inquiry indicate that he had no malicious desire to inflict pain. Consequently, according to his own statements, the appellant acted in accordance with the proper motive (parental purpose) standard in disciplining his children.

**b. Moderate force.**

■ The Model Penal Code provisions made applicable to the military by *Brown*, 26 M.J. 148, limit the force that a parent may use against his or her child. The drafters of the Model Penal Code state, however, that "so long as the person exercising parental authority acts for the purpose of safeguarding or promoting the child's welfare (including the specific purpose of preventing or punishing misconduct), he is privileged under the Model Code unless he *culpably creates substantial risk of the excessive injuries specified in Subsection (1)(b)*." [Emphasis added]. Model Penal Code § 3.08 commentary at 139 (1985). The drafters' analysis of § 3.08(1) further states that the Code does not explicitly demand that the force be reasonable, "[S]o long as a parent uses moderate force for permissible purposes, the criminal law should not provide for review of the reasonableness of the parent's judgment...." However, even if a true parental purpose exists, extreme force, however well-intentioned, is forbidden.

The Supreme Court of Hawaii interpreted the moderate force aspect of the Model Penal Code standard in *State v. Deleon*, 813 P.2d 1382 (Haw.1991). The court concluded that striking a fourteen-year-old daughter on the buttocks and legs from six to ten times with a belt was justified under the circumstances. Although the daughter testified in that case that she was in pain for one and one-half hours, and medical authorities found welts and bruises that lasted a week, the court reasoned that "extreme pain" had not been inflicted. The court concluded that as a matter of statutory interpretation, the pain inflicted and the bruises involved did not rise to the same level as "death, serious bodily injury, disfigurement, or extreme pain" proscribed by the Model Penal Code provision in the state statute. *Id.*

Although he was not addressing the Model Code moderate force/excessive injury standard directly, Judge Charles E. Moylan, Jr., quoting R. Perkins *Criminal*

Law (2d ed. 1969), stated in *Anderson v. State*, 61 Md.App. 436, 487 A.2d 294 *cert. denied*, 303 Md. 295, 493 A.2d 349 (1985), that the test of unreasonable force in a parental discipline case "should be found, *not in some slight error of judgment as to the force to be used*, but in the substitution of a malicious desire to inflict pain in place of a genuine effort to correct the child by proper means." (Emphasis added).

In an older case, *United States v. Moore*, 31 C.M.R. 282 (C.M.A.1962), the court addressed the issue of moderate force. In that case a six-year-old child smeared lipstick upon a table and lied about the incident to her parents. She was struck twice on the back with a twenty-nine-inch-long piece of half-inch hose and then confessed. She was then beaten twenty-five more times. In that case the court determined that the first two blows struck "cannot *per se* be said to amount to the use of excessive force." *Id.* at 288.

■ While the conclusion in *United States v. Moore* might be rejected today, the principle in the decision suggests that the implement chosen to administer punishment may not necessarily be determinative of the lawfulness of the force used. We are satisfied that the use of a leather belt to punish a recalcitrant seven or eight-year-old child is not *per se* a force designed to cause or known to create a substantial risk of excessive injury.

■ Several legal conclusions can be drawn from analyzing the Model Code and relevant case law. It is apparent, that under some circumstances, a parent who acts with a bona fide parental purpose may lawfully punish his or her child for misconduct by striking him or her on the buttocks and back of his or her legs with a belt with sufficient force that welts and bruising are an unintended result. *See Deleon*, 813 P.2d 1382. A parent who acts without parental purpose, however, and inflicts similar welts and bruising may be held criminally responsible for his or her acts. *See Brown*, 26 M.J. 148. Finally, a parent who allegedly acts out of parental concern but uses force designed to cause or known to create a substantial likelihood of "death,

serious bodily injury, disfigurement, extreme pain, or mental distress or gross degradation" may nevertheless be held criminally liable for his or her actions.

■ In the case at bar, the colloquy with the military judge should have established the factual basis for the plea with regard to the bodily injury having been done with "unlawful force or violence" either in the implement selected to apply the force or in the excessive nature of the force applied. *See* Manual for Courts–Martial, United States, 1984, Part IV, para. 54b(3)(c). Pertinent portions of the record describe the incident.

MJ: And you've been a parent for some years. Now tell me what you did in regard to Patrick that's excessive.

ACC: Basically, I spanked him with a belt, attempting to influence his behavior.

MJ: How did you go about doing that?

ACC: He was basically standing. I held him by one arm and spanked him with a leather belt that I have.

MJ: How many times?

ACC: Between six and ten; somewheres in there. At the time I felt that I was doing what was right. Looking back on it and seeing the result of the spanking, I think that I overstepped my authority.

MJ: Well, tell me, did you use a great deal of force? How was it excessive?

ACC: I didn't feel that it was a great deal of force, but then, it's pretty easy to inflict bruises on a child. I believe, even though it was not my intent, I think I spanked him a little bit too hard using a belt.

MJ: Were there bruises evident when you were doing this or shortly thereafter?

ACC: Shortly thereafter.

MJ: Was there any bleeding?

ACC: No, sir.

MJ: Redness, I take it.

ACC: Yes, sir.

MJ: Do you feel that your hitting the child under those circumstances was unreasonable at the time, looking back on it now?

ACC: Yes, sir.

MJ: And not within the legal rights as a parent?

ACC: Yes, sir.

MJ: How often do you do this?

ACC: This has been the first time I've spanked Patrick in quite some time. I don't——

MJ: Well, to get back to the specification here. You mentioned an incident in the middle of April. The charge sheet indicates between 1 April and 1 June. Is there more than one incident we're talking about?

ACC: No, sir.

MJ: So this was just the one incident around the 15th of April?

ACC: Yes, sir....

[Now in regard to Melanie] When I spanked her, of course, she didn't like it. And I was angry, but I felt at the time that my punishment was appropriate. Looking back on it, I was excessive and I overstepped my——

MJ: Well, what did you do?

ACC: I spanked her with a belt.

MJ: Where?

ACC: On the backs of the legs and the buttocks.

MJ: About how many times?

ACC: Between five and ten times. It wasn't a lot. Unfortunately, I exercised excessive force when I was using the belt.

MJ: Which resulted in bruises?

ACC: Yes, sir.

MJ: Any cuts or bleeding?

ACC: No, sir.

MJ: Not that you noticed anyway?

ACC: No, sir.

MJ: This was the only time?

ACC: Yes, sir.

MJ: When is this, again?

ACC: About the 25th of April.

MJ: 1990, at Fort Ord?

ACC: Yes, sir.

MJ: So this was the end of April?

ACC: Yes, sir.

MJ: And with your son was about the middle of April?

ACC: Yes, sir.

MJ: And you felt under both of these sessions that the amount of force you used was exceeded what a reasonable person should have used under the same circumstances?

ACC: Yes, sir.

MJ: All right, Sergeant Scofield, as I defined before, the act must be done without legal justification or excuse and without the lawful consent of the victim. Do you feel under the circumstances that you didn't have legal justification or excuse for hitting your children in this manner?

ACC: Yes, sir.

▬ The appellant concluded that he erred in the amount of force he used to punish and discipline his children. Although he admitted that in hindsight the force he used was excessive, the appellant's conclusion that the amount of force was excessive is not dispositive of the issue when the record of trial does not support that conclusion as a matter of law. The law condemns the otherwise lawful application of parental disciplinary force that culpably creates a substantial risk of, or inflicts the excessive injuries noted in subsection 3.08(1)(b) of the Model Penal Code.

Evidence presented during sentencing clearly indicated that the injuries were not excessive and that they were unintentionally inflicted while the appellant possessed a lawful parental purpose. The pediatrician who testified about Melanie's condition was unable to say unequivocally that her bruises were serious. He explained that the bruising was "fairly extensive" and that Melanie was admitted to the hospital for evaluation rather than treatment. The children's injuries depicted in the photographs admitted as Prosecution Exhibits 3 through 11 are not sufficient *per se* to satisfy the "extreme force" or "excessive injury" standard.

After having heard all the evidence during sentencing, the military judge failed to reopen the plea inquiry to ensure that the

record showed that the injuries suffered by the children were excessive, or that the force used to administer punishment was known to cause or to create a substantial risk of excessive injury. This error materially prejudiced the substantial rights of the appellant.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge NAUGHTON and Judge HOWELL concur.