**UNITED STATES, Appellee,**

v.

**Specialist Vistasph F. GOWADIA, 220–84–2113, United States Army, Appellant.**

**ACMR 9100566.**

U.S. Army Court of Military Review.

28 Feb. 1992.

For Appellant: Captain Michael P. Moran, JAGC, Captain Beth G. Pacella, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Gregory T. Baldwin, JAGC (on brief).

Before CREAN, WERNER and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

A military judge sitting as a general court-martial found the appellant guilty, contrary to his pleas, of assault consummated by a battery and aggravated assault on his twelve-year-old stepson, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1982). The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for 40 months, forfeiture of all pay and allowances, and reduction to Private E1.

This case involves two issues, variance and the reasonableness of parental punishment of a child. The act which formed the basis for Specification 1 of the Charge, assault consummated by a battery, was the appellant's striking his stepson on the legs with a web belt on 5 January 1991. The belt was an Army uniform web belt from which the appellant had removed the metal buckle and tip.

The actions of tying Tony's hands and legs and placing a plastic bag over his head was the basis for Specification 2 of the Charge, aggravated assault, on 5 January 1991. On Saturday morning, 5 January 1991, the appellant and his wife had an argument with Tony over his failure to complete some chores such as failing to feed his little sister, and for poor school work. The appellant verbally admonished Tony about his failure to complete his chores. When Tony did not respond to the counseling, the appellant became frustrated and, with his wife's assistance, tried to place a plastic bag over Tony's head. Tony was able to resist so the appellant tied Tony's ankles together and his hands behind his back. The parents then placed a

plastic bag over Tony's head for a short time. They released Tony and the appellant discussed with Tony his responsibilities.

Doctor G, an emergency room physician at the Army Community Hospital at Fort Ord, examined Tony on 5 January 1991. The only discernible injuries on Tony were a 1 by 2 centimeter "welt" on his left inner thigh and a possible contusion on his neck. It was Doctor G's opinion that the welt was approximately a week old, but the neck contusion was well healed and older and could have been caused in a playground type incident. Doctor G further opined that the welt on the thigh was possibly caused by a belt being used with excessive force. Doctor M, Chief of Primary Care at the Army Community Hospital at Fort Ord, testified at trial concerning the physical and psychological effects of having a plastic bag placed over one's head:

> [It] immediately brings on a huge amount of panic. There is a—you're immediately fighting for your life. It's a survival mechanism because your air supply is cut off and it's a very threatening, very dramatic thing to have happen.
>
>  . . . .
>
> The first thing that happens when a plastic bag is placed over the head of a child or any individual is that there's a panic ensues and the panic, of course, sets up breathing very rapidly, raises the heart rate. And one of the things that happens with the rapid breathing is the carbon dioxide that's normally produced in the lungs is blown out more rapidly and, of course, is contained within the bag, and the oxygen, of course, is not available to the air, the normal ambient air, so there is a condition called hypoxia or low oxygen develops and a hypocarbia or an increased amount of $CO2$. The physiology of the body is that the respiratory rate or how quickly and how deeply you breathe is not controlled on how much oxygen is sensed but how much carbon dioxide is sensed, so, consequently, the longer the bag is in place the more rapidly the person will breathe, which sets up a situation of very rapid, almost a panting type of breathing, which, of course,

even reduces the oxygen further. So when the bag is in place, it's a real panic situation.

> Q. Could that cause harm to the lungs or to the brain or to the child physically?
>
> A. The first system, the first physical system that's going to be harmed by that is the central nervous system of the brain. It won't cause so much harm to the lungs unless there's an already existing lung condition such as pneumonia or something like that. But the central nervous system or the brain and the spinal cord is the most active tissue in the body, requires the most oxygen, requires the most calories, requires the greatest amount of blood supply, and so it's the one that is also most sensitive to a lack of oxygen. So if a plastic bag is held in place for a long enough period of time and the amount of oxygen in the system drops, drops, drops, then after a period of almost five, five minutes, right around five minutes, permanent brain damage does occur.

This case was initially submitted to this Court on its merits. However, this Court specified the following issues:

I

WHETHER THE OFFENSE OF WHICH APPELLANT WAS FOUND GUILTY UNDER SPECIFICATION 1 OF THE CHARGE WAS INCLUDED IN THE OFFENSE CHARGED IN THAT SPECIFICATION.

II

IF ISSUE I IS ANSWERED IN THE AFFIRMATIVE, WHETHER, UNDER OUR DECISION IN *UNITED STATES V. SCOFIELD*, 33 M.J. 857 (A.C.M.R. 1991), THE CONDUCT FOR WHICH APPELLANT WAS FOUND GUILTY UNDER SPECIFICATION 1 EXCEEDED REASONABLE PARENTAL DISCIPLINE.

We turn initially to the first specified issue concerning the appellant hitting Tony with a belt on 5 January 1991. The

trier of fact found that the appellant hit Tony with the belt sometime shortly before 5 January 1991, and entered findings that the assault occurred "on or about 1 January 1991." The difference between the date of the offense on the charge sheet and the date that the military judge found the offense to have occurred constitutes what is known as a variance. The two-prong test to determine if an appellant has been prejudiced by a variance is, first, whether the appellant was misled to the extent that he was unable to adequately prepare for trial and, second, whether the appellant was fully protected against another prosecution for the same offense. *United States v. Rath*, 27 M.J. 600, 605 (A.C.M.R. 1988), *pet. denied*, 29 M.J. 284 (C.M.A. 1989).

As in *Rath*, the only variance in this case was in the date of the offense; the victim, location, and overt acts are the same. Prior to entering pleas, the defense moved that the offenses be considered multiplicious as one continual act. The military judge deferred his ruling on the motion until Tony testified concerning the date of the offense. Doctor G's testimony concerning the welt at the Article 32 hearing alerted the trial defense counsel to the potential variance as to date of the act, and the trial defense counsel cross-examined Doctor G as to the age of the welt at trial. Tony testified that the appellant hit him with the belt sometime after Christmas and the trial defense counsel did not question Tony as to the timing of when he was hit. The trial defense counsel also argued variance prior to findings. We find that the appellant's counsel was aware of the possible variance in the date and did prepare for it at trial. We also find that the entire record of trial will protect the appellant against a subsequent trial. Accordingly, we hold that the offense of which the appellant was found guilty under Specification 1 of the Charge was included in the offense charged in that specification.

█ We turn next to the second specified issue concerning whether hitting Tony with the web belt exceeded reasonable parental discipline. Parents are justified in using force to discipline their children if the force is used for the purpose of safeguarding or promoting the welfare of the child, including the prevention or punishment of misconduct, and the force used is not designed to cause, or known to create a substantial risk of causing, death, serious bodily injury, disfigurement, extreme pain or mental distress, or gross degradation. *United States v. Brown*, 26 M.J. 148, 150 (C.M.A.1988) (quoting Model Penal Code § 3.08(1) (A.L.I.1985)). Thus, there must be a proper motive and reasonable or moderate force to constitute reasonable parental discipline. *United States v. Scofield*, 33 M.J. 857, 860 (A.C.M.R.1991).

The appellant hit Tony with a web belt from which he had removed the parts that could cause serious injury and, as Tony testified, only when Tony had done something wrong. The injuries were not serious and not on an area of the body that could be seriously injured by being struck with a belt. We find that the appellant's act of hitting Tony with the belt was done for a proper purpose (punishment of misconduct), and that reasonable or moderate force was used.

█ Finally, we turn to the issue of whether the punishment alleged in Specification 2 of the Charge, which involved tying Tony's hands and legs and placing a plastic bag over his head, exceeded reasonable parental discipline. The appellant may have been properly motivated to impose parental discipline on Tony. However, tying Tony's hands and legs and placing the plastic bag over his head went beyond the use of reasonable or moderate force allowed in parental discipline. The panic that it causes and the substantial risk for death or serious bodily harm goes beyond the bounds of reasonableness. Accordingly, we hold that the appellant did assault Tony with a means or force likely to produce death or grievous bodily harm when he tied Tony up and placed a plastic bag over his head.

We have considered the issues personally raised by the appellant and find them to be without merit. *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

The finding of guilty of Specification 1 of the Charge is set aside and Specification 1 of the Charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, and mindful of the requirements of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances, and reduction to Private E1.

Judge WERNER and Judge HAGAN concur.