UNITED STATES, Appellee,

v.

Staff Sergeant Robert V. WARD, 276–76–1564, United States Army, Appellant.

ACMR 9001802.

U.S. Army Court of Military Review.

31 May 1994.

---

For Appellant: Captain Teresa L. Norris, JAGC (argued); Major Fran W. Walterhouse, JAGC (on brief); Lieutenant Colonel James H. Weise, JAGC, Captain Roy H. Hewitt, JAGC.

For Appellee: Captain John G. Giovannelli, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Captain Glenn L. Kirschner, JAGC (on brief).

Before CREAN, MORGAN, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

GONZALES, Judge:

Contrary to his pleas, the appellant was found guilty at a rehearing by a military judge sitting as a general court-martial of willfully disobeying a superior commissioned officer, damaging non-military property, assault consummated by a battery upon a child under sixteen years of age, and two specifications of assault consummated by a battery, in violation of Articles 90, 109 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 909 and 928 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to Private E1.

Before this court, the appellant asserts, inter alia, that the evidence was factually and legally insufficient to support a finding of guilty of assault consummated by a battery upon a child under sixteen years of age, because the government failed to prove beyond a reasonable doubt that the affirmative defense of parental discipline did not render the appellant's actions lawful. He also contends that this court should order the government to restore to him all military pay and allowances withheld from him pursuant to his initial court-martial that was subsequently set aside by this court. We disagree and affirm.

The history of this case began on 25 June 1990, at Fort Campbell, Kentucky. Pursuant to his pleas, the appellant was found guilty of willfully disobeying a superior commissioned officer (two specifications), damaging nonmilitary property, assault consummated by a battery, assault and battery upon a child under sixteen years of age, and communicating a threat in violation of Articles 90, 109, 128 and 134, UCMJ. The general court-martial sentenced the appellant to a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances,

and reduction to Private E1. On 9 August 1990, consistent with a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for thirty-six months, forfeiture of all pay and allowances, and reduction to Private E1.

On 27 March 1991, this court returned the record of trial to The Judge Advocate General for a limited hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), to determine whether the appellant lacked sufficient mental capacity to participate in his defense at the time of trial. On 8 November and 3 and 5 December 1991, the *DuBay* hearing was held at Fort Riley, Kansas. On 6 August 1992, this court set aside the findings and sentence and authorized a rehearing, agreeing with the findings of the military judge at the *DuBay* hearing that "due to ... medications at the time of his trial, [the appellant] was mentally incompetent to understand the nature of the proceedings against him and unable to cooperate intelligently in his defense." [1] *United States v. Ward*, ACMR 9001802, slip op. at 4 (A.C.M.R. 6 Aug. 1992) (unpub.). Subsequently, the appellant regained the appropriate mental capacity to stand trial and on 15 September 1992, the convening authority at Fort Leavenworth, Kansas, ordered a rehearing. The appellant's second court-martial was concluded on 18 December 1992. This appeal is from the second court-martial.

The appellant had been living with his girlfriend, Mrs. Beverly Ramsey, and her three-year-old son Nathan in Fayetteville, North Carolina, for approximately six months when he was reassigned from Fort Bragg, North Carolina, to Fort Campbell, Kentucky, in November 1989. Initially, this reassignment ended their relationship and the appellant left Fayetteville without Mrs. Ramsey and Nathan. However, while the appellant was en route to Fort Campbell, they resumed their relationship. The appellant rented a home in Clarksville, Tennessee, for himself, Mrs. Ramsey, and Nathan. The

incident giving rise to the assault consummated by a battery upon a child under sixteen years of age occurred three months later between the appellant and Nathan.

On 20 February 1990, Mrs. Ramsey asked the appellant to "watch Nathan" while she attended an evening musical concert. During her absence, the appellant "noticed that Nathan was playing with something out of the corner of his eye on the coffee table. There was a candle, he knocked it over." The appellant asked Nathan what he was doing. Nathan replied that he wasn't doing anything. The appellant wanted Nathan to tell him the truth by admitting that he was playing with the candle. Nathan denied doing anything. Concerned that Nathan was lying to him, the appellant continued to question the child, hoping that he would admit to playing with the candle. When Nathan again denied doing so, the appellant spanked him on his "butt." The appellant repeatedly asked Nathan, "Were you playing with the candle?" Each time Nathan replied, "No." The appellant then slapped Nathan two or three times on the left side of his face, causing Nathan to cry.

When Mrs. Ramsey returned home from the concert, she noticed a mark on the left side of Nathan's face. She also noted that Nathan was acting "afraid" and that "there was fear there." She asked the appellant what had happened. The appellant replied that Nathan had lied to him and that he had "slapped the shit out of him." Mrs. Ramsey took Nathan to the emergency room of Fort Campbell's Blanchfield Army Community Hospital the following afternoon when she "saw how bad" the mark was on Nathan's face.

Doctor Wibking examined Nathan and determined that Nathan had a bruised, slightly swollen, and red left cheek and ear that was consistent with a slap injury. Nathan's vital signs were normal; he was alert and active. The tympanic membrane (thin membrane that closes externally the cavity of the middle

---

1. The appellant was receiving various medications to control anxiety and depression. These included Navane, Imipramine, Elavil, Cogentin, and Xanax. Just prior to his initial court-martial on 25 June 1990, the appellant was being administered medication in such different kinds and dosages as to cause him to have an organic mental disorder.

ear; also called eardrum) had no abnormalities and Nathan was breathing normally. While the amount of force used on Nathan was "fairly significant" and could have caused more severe, serious, or permanent injury, Doctor Wibking found no injury to Nathan's eyes, ears, or nose. He required no further medical treatment after Doctor Wibking's examination. Nevertheless, since Mrs. Ramsey had alleged possible child abuse by "her boyfriend," Doctor Wibking referred the case to Social Work Services, who in turn notified the Tennessee Department of Human Services.

■ Certain kinds of conduct that would otherwise meet the elements of proof for assault consummated by a battery on a child under sixteen years of age, may be justified by a parental duty to administer discipline. *United States v. Brown,* 26 M.J. 148, 150 (C.M.A.1988). In *Brown,* the Court of Military Appeals adopted the following test in the Model Penal Code to determine whether a parent's purpose for using force was proper and whether the amount of force was reasonable.

The use of force upon or toward the person of another is justified if:

(1) the actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:

(a) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and

(b) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation....

Model Penal Code § 3.08(1) (American Law Institute 1985).

■ The right of a parent to discipline his or her child by use of force is not without limits. *United States v. Robertson,* 36 M.J. 190, 191 (C.M.A.1992). There must be a proper motive and reasonable force to constitute the affirmative defense of parental disci-

pline. *United States v. Gowadia,* 34 M.J. 714, 717 (A.C.M.R.1992); *United States v. Scofield,* 33 M.J. 857, 860 (A.C.M.R.1991).

We will apply the Model Penal Code standard to determine whether the evidence of record is sufficient for a reasonable fact finder to find beyond a reasonable doubt that the slaps to the face and the substantial risk of causing serious injuries to a three-year-old child constituted an assault consummated by a battery, and to overcome the affirmative defense of parental discipline. *Robertson,* 36 M.J. at 191.

■ We must first determine under the Model Penal Code whether the appellant qualified for one of the four roles of an "actor" before applying its two-part test. We find that the appellant was not Nathan's "parent or guardian." Although the appellant was Nathan's mother's live-in boyfriend, we further find that he was not a "person similarly responsible for [Nathan's] general care and supervision." There was nothing in the appellant's or Mrs. Ramsey's testimony to indicate that the appellant was "vested" with the responsibility for Nathan's general care and supervision. *See* Model Penal Code § 3.08 Explanatory Note at p. 138 (1985). The appellant's relationship with Nathan was solely derived from and a consequence of his being Mrs. Ramsey's boyfriend. This relationship did not cause the appellant to claim Nathan as a dependent. The appellant's military records indicate that he was single with no dependents. Nor was the appellant's status used by Mrs. Ramsey to seek a medical examination for Nathan at Blanchfield Army Community Hospital. Nathan was examined in his independent status as the son of deceased Master Sergeant Larry Ramsey. However, we find that when Mrs. Ramsey asked the appellant "to watch" Nathan on the evening of 20 February 1990, the appellant became "a person acting at the request of such parent" and, thus, qualified as a person who could claim parental discipline protection.

In applying the Model Penal Code two-part test to the evidence, we find that the evidence supports a proper "purpose" for the appellant to exercise "punishment." It was not unreasonable for the appellant to believe

that Nathan had repeatedly lied to him about playing with the candle on the coffee table and that Nathan's behavior constituted "misconduct." The appellant had the discretion to discipline Nathan under these circumstances. *See Scofield,* 33 M.J. at 861.

The second prong of the test is one of reasonable force. In this case, the record shows that the appellant slapped Nathan two or three times on the left side of his face. The slaps caused him to cry and resulted in a bruise to and swelling of the left cheek and ear area that immediately caught Mrs. Ramsey's attention when she returned home. The treating physician testified that Nathan's face had a couple of streaks of erythema or redness extending from the left ear towards the cheek that was compatible with a slap injury. Although no injuries were found to the eye, ear, or nose, the doctor expressed his concern about an adult slapping a child as young as Nathan. In his opinion, the slaps that were applied to Nathan had "fairly significant force, maybe not immediately life threatening of itself, but could have caused other serious injuries" and could have "knock[ed] him off his feet." The appellant himself described the incident in terms of, "I slapped the shit out of him." Photographs show that the bruise remained eighteen hours after the punishment was administered.

An "actor" who allegedly acts out of parental concern, but uses force "known to create a substantial risk of causing . . ., serious bodily injury, . . ., extreme pain or mental distress . . ." may nevertheless be held criminally liable for his actions. *Scofield,* 33 M.J. at 862. There is competent evidence, as noted above, to support a conclusion that the appellant used such excessive force in this case.

The test for legal sufficiency of the evidence is whether a reasonable fact finder, viewing the evidence in the light most favorable to the prosecution, could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d

560 (1979); *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A.1991). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). We have reviewed the record in the court-martial proceedings and the briefs filed by the appellant and the government. We have taken into account the oral arguments presented by both counsel. After carefully considering the record, we hold that the evidence is both legally and factually sufficient to support the findings of guilty of assault consummated by a battery on a child under sixteen years of age. The evidence is also sufficient to prove that the appellant cannot prevail on the affirmative defense of parental discipline since the force used was reasonably known to create a substantial risk of serious bodily injury.

■ Whatever may be the merits of the appellant's assertion under *Dock v. United States* 27 Fed.Cl. 62 (1992), concerning the restoration of his military pay and allowances that were forfeited as a result of his first court-martial, we hold that the appellant's claim of monetary entitlements is exclusively the province of the U.S. Court of Federal Claims. *United States v. Allen,* 33 M.J. 209, 215 (C.M.A.1991); *Keys v. Cole,* 31 M.J. 228, 234 (C.M.A.1990).[2]

■ We have considered the remaining assignments of error, including those personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and hold that none warrant relief. We specifically reviewed with great care the appellant's claim that both of his trial defense counsel fell short of the competency standards under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). In order to prevail on such a claim, the appellant must establish both that his defense counsel's performance was defi-

---

2. We note from the appellant's brief that he has yet to submit a formal request for restoration of his pay and allowances to the Defense Finance and Accounting Service, Indianapolis Center, Indianapolis, Indiana.

cient and that the deficiency prejudiced his defense such that he was deprived of a fair trial. We will not second-guess tactical decisions made at trial by defense counsel. *United States v. Morgan,* 37 M.J. 407 (C.M.A.1993). After reviewing the record of trial and the affidavits submitted by the appellant, we find that the appellant has failed to meet his heavy burden of showing that trial defense counsel's performance was deficient and that the deficiency resulted in prejudice. Accordingly, the strong presumption that both of his trial defense counsel were competent prevails. *Strickland,* 466 U.S. at 698–700, 104 S.Ct. at 2070–71; *Scott,* 24 M.J. at 188; *United States v. Crum,* 38 M.J. 663 (A.C.M.R.1993).

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge MORGAN concur.