# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**
v.
**Staff Sergeant QUINTAN G. BRASSFIELD**
**United States Army, Appellant**

ARMY 20230516

Headquarters, U.S. Army Center for Initial Military Training and Fort Eustis
Adam S. Kazin, Military Judge
Lieutenant Colonel Kevin D. Kornegay, Staff Judge Advocate

For Appellant: Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Captain Amber L. Bunch, JA (on brief).

For Appellee: Lieutenant Colonel Kalin P. Schlueter, JA; Captain Anthony J. Scarpati, JA (on brief).

20 November 2024

----------------------------------
OPINION OF THE COURT
----------------------------------

ARGUELLES, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of domestic violence in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b (2019) [UCMJ]. The military judge sentenced appellant to confinement for twenty-eight days and reduction to the grade of E-5. The convening authority took no action on the sentence.

This case is before the court for review pursuant to Article 66, UCMJ. Appellant raises two assignments of error, challenging whether reasonable force

---

[1] Judge ARGUELLES decided this case while on active duty.

should be considered in the parental discipline defense and factual sufficiency, which merit discussion but no relief.[2][3]

## BACKGROUND

Appellant is the father of twin boys, the victims in this case (hereinafter referred to as "V1" and "V2"), who were eleven at the time of appellant's offenses. In early January of 2022, the boys stole money from their stepmother and then lied when appellant questioned them. After further questioning at the family home on 7 January 2022, one of the boys confessed, and appellant ordered both boys to go upstairs to their respective bedrooms, strip down to their underwear, and await their punishment.

Appellant first went to V1's room and whipped him with a folded belt while yelling at him for his shameful behavior. V1 testified appellant whipped him "like, a lot" and after he fell to the ground, appellant whipped him some more, striking his back, legs, and arms. V2 testified that he heard appellant whipping his brother for three to four minutes, and his brother was screaming and crying. V2 explained how appellant then came to his room and struck him with a belt on the arm, wrist, nipple, back, and face for four to five minutes. Appellant then returned to V1's room where he hit him a few more times with the belt, and then brought V2 into the room and whipped both boys one final time.

V1 testified the punishment was "the worst beating [he] ever took" that left "bruises and swelling" on his back, legs, and arms. Likewise, V2 testified the whipping left him in pain everywhere, left some bleeding marks on his wrist, and his face was a little swollen and "kind of bleeding." Although V1 stated some of his friends at school saw the marks on his body, Army Criminal Investigation Division (CID) did not become aware of the incident until three weeks later, on 28 January 2022. CID agents interviewed and took photos of both boys on the same day, with additional follow-up photos taken on 2 February 2022. Both boys testified the photos were of the remnants of the injuries they suffered in the whipping.

At trial, the government also called an expert in the field of forensic nursing and pediatric abuse. Based on her review of the photos, the expert observed five separate injuries on V1's left wrist, abdominal area, chest cavity, and left thigh, and

---

[2] We have also considered the matter personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find it to be without merit.

[3] The "Modifications or Supplements to Statement of Trial Results" of the Judgment of the Court is amended to reflect "9/29/2023" as the date the Statement of Trial Results was signed.

eleven specific injuries on V2's upper right arm, upper left shoulder, mid back area, lower back area, right flank, and left abdominal area. The expert explained the bruising process and discoloration associated with each injury and described how some of the injuries were directly above vital organs. Although she could not say with absolute certainty all the injuries depicted in the photos were the result of the whipping three weeks earlier, the expert did describe how the injuries matched the "pattern" of, and were consistent with, infliction by an Army web belt. Finally, the expert testified that because, *inter alia*, these injuries were on multiple "planes" of the body, they were consistent with the boy's report of abusive behavior, and inconsistent with accidental injury or playing sports or tag.

Appellant testified although he was targeting his lower backside, V1 "kept jumping around." Appellant claimed he could not remember how long the whipping lasted, but thought it was "less than a minute," and he did not see any visible cuts or bleeding. Appellant stated his whipping of V2 was pretty much the same, except "[h]e was a bit more jumpy." Appellant also testified the boys typically had scrapes, scratches, scars, and bruises from their daily activities like skateboarding, biking, and general horsing around. Finally, appellant stated, based on how well-dressed and well-spoken the boys were when they testified at trial, "I believe [my discipline] played a path [sic] in setting them on the right – that I played a part – a role in sending them on the right path." Appellant admitted on cross-examination he did not know exactly where his belt hit the boys.

The military judge entered special findings per the defense's request to specify "the facts at issue that could inform the court's decision on the matters of unreasonable or excessive parental discipline." The military judge found appellant's subjective intent was to promote the welfare of the boys by punishing them for their "misconduct, namely the stealing of money from their stepmother, and the repeated lies." The military judge also found, however:

> [I]n the context of all the evidence and beyond a reasonable doubt, the force used was objectively unreasonable and excessive. The evidence that supports this finding includes, but is not limited to, the accused's directing his children to remove their clothing before striking them, the nature and extent of injuries to the children's bodies, the locations of the injuries on their bodies, and the extreme pain described by the children.[4]

---

[4] Further in his special findings, the military judge defined unreasonable and excessive force.

## LAW AND DISCUSSION

### A. *Parental Discipline Defense*

#### *1. Law*

Our superior court first recognized the parental discipline defense to an assault charge in *United States v. Brown*, 26 M.J. 148 (C.M.A. 1988). Citing to the Model Penal Code, the Court of Military Appeals (CMA) held that the use of force by parents or guardians is justifiable if:

> (a) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and
>
> (b) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

*Id.* at 150 (citing Model Penal Code § 3.08(1) (Am. L. Inst. 1985)). With respect to the second prong of the test, the CMA in *Brown* specifically looked at the "reasonableness" of the punishment. *Id.* at 151.

In *United States v. Robertson*, the CMA reiterated "[t]he second prong of the [parental discipline] test is one of *reasonable* force." 36 M.J. 190, 192 (C.M.A. 1992) (emphasis added). Likewise, in *United States v. Rivera*, the Court of Appeals for the Armed Forces (CAAF) (previously named CMA) reaffirmed that "*Brown* established a text of *contextual reasonableness* in determining when proper parental motive turns to criminal anger, or necessary force becomes a substantial risk of serious bodily harm." 54 M.J. 489, 491 (C.A.A.F. 2001) (emphasis added). This requires a review of the circumstances of each case regarding the force used as "[c]learly what is reasonable between a father and his 13-year-old son may be unreasonable with an infant." *Id.*

Our court first addressed this issue in *United States v. Scofield*, 33 M.J. 857 (A.C.M.R. 1991). Failing to address that our superior court in *Brown* specifically looked to the reasonableness of the force used regarding a particular child, the court in *Scofield* relied upon the drafters' analysis of the Model Penal Code which apparently stated that "the Code does not explicitly demand that the force be reasonable, '[s]o long as a parent uses moderate force for permissible purposes, the criminal law *should not* provide for review of the reasonableness of the parent's judgment . . . ." *Id.* at 861 (emphasis added). The *Scofield* court also looked to the Hawaii Supreme Court for its interpretation of this provision. The court then drew several legal conclusions, none of which mentioned the reasonableness of the force

4

applied, and set aside appellant's convictions, without analyzing the contextual reasonableness of his actions.

As described above, in multiple decisions issued after *Scofield*, our superior court has consistently held the second prong of the parental discipline defense is "one of reasonable force." No other decision of this court, either published or unpublished, has adopted the rationale of *Scofield*. Likewise, no other court has cited to the drafters' analysis of the Model Penal Code, or otherwise attempted to look beyond or outside the precedent set by our superior court.

Indeed, only one year after *Scofield* was issued, we held in *United States v. Gowadia* that "there must be a proper motive and *reasonable* or moderate force to constitute reasonable parental discipline." 34 M.J. 714, 719 (A.C.M.R. 1992) (emphasis added) (citing *Scofield*, 33 M.J. at 860); *see also United States v. Thompson*, ARMY 20140974, 2021 CCA LEXIS 624, at *7 (Army Ct. Crim. App. 17 Nov. 2021) (mem. op.) ("In *Rivera*, our superior court noted that '*Brown* established a test of contextual reasonableness . . .'" (citing *Rivera*, 54 M.J. at 491)); *United States v. Ruiz*, ARMY 20210541, 2023 CCA LEXIS 76, at *3 (Army Ct. Crim. App. 14 Feb. 2023) (summ. disp.) ("[T]he law also – and predictably – criminalizes a parent's use of force that an objective person would view as unreasonable"); Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 5-16 (29 Feb. 2020) ("Unreasonable or excessive force is that designed to cause or known to cause a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain . . . . [I]f you are satisfied beyond a reasonable doubt that at the time of the accused's act(s) . . . the force used was unreasonable or excessive, then the act(s) may not be excused as permissible.").

*2. Analysis*

Appellant now claims that the military judge erred by considering the "reasonableness" of the imposed discipline. Not surprisingly, appellant's argument is based almost entirely on this court's holding in *Scofield*. To the extent *Scofield* stands for the proposition that it is error to consider the contextual reasonableness of the parental force used on a particular child, such a holding directly conflicts with CAAF precedent, and it is overruled. *See Ruiz*, 2023 CCA LEXIS 76, at *3 ("Appellant urges us to find the Model Penal Code persuasive: 'Notably, the Code does not demand that the force be reasonable.' Our superior court sees it differently." (citing *Rivera*, 54 M.J. at 491)).[5]

---

[5] In his closing argument, defense counsel asserted, *inter alia*, "discipline is a complicated issue for parents [ ] I mean, essentially, this goes to *reasonableness* and

(continued . . .)

We reject appellant's challenge to the sufficiency of the military judge's special findings and alleged failure to define the term "extreme pain." First, in finding the force used was objectively unreasonable and excessive because, *inter alia,* appellant directed the boys to remove their clothing, the nature and extent of the injuries, the location of injuries, and the extreme pain described by the children, the military judge's special findings were more than sufficient. *See United States v. Bailey,* __ M.J. __, 2024 CCA LEXIS 440, at *8 (Army Ct. Crim. App. 18 Oct. 2024) (holding that where the military judge ultimately found appellant guilty beyond a reasonable doubt of every element of the specification, appellant's objection to the nature and breadth of the military judge's special findings are without merit).

Likewise, the military judge was under no obligation to define the term "extreme pain" in his special findings. *See United States v. Hendrix,* 77 M.J. 454, 457 (C.A.A.F. 2018) ("When a term is not statutorily defined, we accord it its ordinary meaning." (citing *United States v. Pease,* 75 M.J. 180, 184 (C.A.A.F. 2016))).

### B. Factual and Legal Sufficiency

#### 1. Law

Article 66(d)(1)(B), Factual Sufficiency Review, provides:

(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

---

(. . . continued)
excessiveness under the law," "[t]he law recognizes that *reasonable* and non-excessive parental discipline could leave a bruise or a mark on a child," and "any number of whipping or amount of whipping must be considered as to whether or not it's *reasonable* and whether or not it's non-excessive or excessive in any given circumstance." Given that his defense counsel admonished the military judge to consider the reasonableness of the punishment, appellant's current claim that the military judge erred in doing exactly that must also fail under the invited error doctrine. *See United States v. Martin,* 75 M.J. 321, 325 (C.A.A.F. 2016) ("The invited error doctrine prevents a party from 'creating error and then taking advantage of a situation of his own making on appeal.'") (citations omitted).

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

The CAAF recently addressed the application of Article 66(d)(1)(B) in *United States v. Harvey*, __ M.J. __, 2024 CAAF LEXIS 502 (C.A.A.F. 6 Sep. 2024). First, CAAF held if the two "trigger conditions (i.e., an assertion of an error and a showing of a deficiency)" are not met, then nothing in Article 66 either requires or allows this court to review the factual sufficiency of the evidence. *Id.* at *5, 6. Assuming the trigger conditions are met, CAAF construed the requirement of "appropriate deference" to imply "that the degree of deference will depend on the nature of the evidence at issue," and held that Article 66 "affords the CCA [Court of Criminal Appeals] discretion to determine what level of deference is appropriate." *Id.* at *7-8. With respect to the last part of the analysis, CAAF held "the quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is 'proof beyond a reasonable doubt,' the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at *10. The CAAF concluded:

Accordingly, for a CCA to be "clearly convinced that the finding of guilty was against the weight of the evidence," two requirements must be met. First, the CCA must decide that the evidence, *as the CCA has weighed it*, does not prove that the appellant is guilty beyond a reasonable doubt. Second, the CCA must be clearly convinced of the correctness of this decision.

*Id.* at *12 (emphasis in original).

With respect to legal sufficiency, our review is de novo. *United States v. Robinson*, 77 M.J. 294, 297 (C.A.A.F. 2018). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 297-98 (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). Because we must draw "every reasonable inference from the evidence of record in favor of the prosecution," the standard for legal sufficiency "involves a very low threshold to sustain a conviction." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (quoting *Robinson*, 77 M.J. at 297-98; *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

### 2. *Analysis*

Starting with the two "triggers" for our factual sufficiency review, we find although appellant has asserted error, he has failed to "make a specific showing of a deficiency in proof." On the one hand, we have the testimony of the boys, the testimony of the expert, and the physical evidence of the whippings documented in the photographs. In contrast is appellant's testimony that he continued to whip the boys while they were jumping around and he did not know exactly where he hit them or remember how long the punishment lasted. Although the CAAF in *Harvey* did not define what constituted a "specific showing of a deficiency in proof," on this record we find that appellant's testimony and any minor inconsistencies in the victims' testimony does not establish a specific deficiency of proof.

But, even if appellant had satisfied the requirements to trigger our factual sufficiency review, the result would still be the same. Specifically, after giving the appropriate level of deference to the military judge who saw and heard the witnesses as they testified, and based on our own review and weighing of all the evidence in the record of trial, we are convinced appellant was guilty beyond a reasonable doubt. *Cf. United States v. Chinchilla*, ARMY 20150266, 2017 CCA LEXIS 561, at *12 (Army Ct. Crim. App. 18 Aug. 2017) (mem. op.) ("We find appellant's self-serving version of the encounter not credible"); *cf. United States v. Ross*, ARMY 20190537, 2020 CCA LEXIS 353, at *12 (Army Ct. Crim. App. 30 Sep. 2020) (mem. op.) ("Contrary to what appellant now suggests, however, the mere fact that he testified to a different or exculpatory version of the incident does not necessarily mean that there is a 'fair and rational hypothesis other than guilt.'").

For all the same reasons, and after drawing every reasonable inference from the evidence of record in favor of the prosecution, we find appellant's conviction is also legally sufficient.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Chief Judge POND, Senior Judge FLEMING, Judge PENLAND, Judge MORRIS, Judge JUETTEN, Judge COOPER, Judge PARKER, and Judge SCHLACK concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court