# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and ARGUELLES[1]
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Master Sergeant KELVIN R. CURRY**
**United States Army, Appellant**

ARMY 20240073

Headquarters, U.S. Army Military District of Washington
Adam S. Kazin, Military Judge
Colonel Toby N. Curto, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Beau O. Watkins, JA; Captain Stephen R. Millwood, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Jonathan Potter, Esquire; Major Beau O. Watkins, JA; Captain Stephen R. Millwood, JA (on brief on specified issue).

For Appellee: Colonel Richard E. Gorini, JA; Major Patrick S. Barr, JA; Major Lisa Limb, JA (on brief); Colonel Richard E. Gorini, JA; Major Lisa Limb, JA; Captain Anthony Scarpati, JA (on brief on specified issue).

16 May 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ARGUELLES, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of child endangerment by culpable negligence, in violation of Article 119b, Uniform Code of Military Justice, 10 U.S.C. §§ 919b (2019) [UCMJ]. The panel acquitted appellant of two specifications

---

[1] Judge ARGUELLES decided this case while on active duty.

of domestic violence, in violation of Article 128b, UCMJ, and sentenced him to perform hard labor without confinement for three days, confinement for three days, and a reprimand. The convening authority dismissed a previously withdrawn specification, issued the reprimand, and took no further action.

This case is before the court for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error, which merits discussion but no relief.

## BACKGROUND

At the time of the offense, May of 2020, appellant was living in a townhouse with his then-wife and his six children. With the apparent mutual consent of all involved, also living in the townhouse was appellant's girlfriend and her minor son. On 15 May 2020, after appellant got into a physical altercation with his son, his thirteen-year-old female daughter (hereinafter referred to as the victim) uploaded a picture of the police at the residence with the caption "Imagine having an abusive father." When appellant and his wife were going through the victim's phone later that day, in addition to the posting, they also discovered a dating profile that the victim was using for "sexting with grown men." In addition, while in the process of reviewing the phone, a man called the victim's phone asking if they could meet and whether she had "any sisters, any ladies in the house." The victim's brother, who had previously been in the physical altercation with appellant, testified that appellant and his wife told him and the victim they were bad kids and were "going to be treated like prisoners."

The next day, appellant ordered both the victim and her brother to move into the backyard shed with their sleeping bags and jackets.[2] The shed was filled with tires and yard equipment. The victim, who was seventeen at the time of the trial, also testified that there was gas all over the shed floor and described how she had to throw away her jacket because the gas ruined it. With respect to how long the victim and her brother spent in the shed, the testimony was inconsistent. Appellant's wife testified that appellant did not allow them to move back into the house until about a month later. The victim's brother, who was twenty at the time of the trial, testified that he was "not totally for sure of the time" and "had no track of time." At one point he stated it was not more than a week, but then later said "[t]o the best of my knowledge, it had to be a month and a half or less, but I'm not totally for sure." The victim was also unsure of the exact length of time she lived in the

---

[2] There was testimony later in the case that because of the Covid-19 pandemic lockdown, the children were not attending school in May and June of 2020, but were rather participating in "hybrid" learning by logging into their laptops.

shed but testified it was probably more than a couple of weeks, since she did not come out of the shed until after July 22nd.

On the other hand, appellant's girlfriend testified that the children were in the shed "for about four days total." To contradict the children's testimony that they lived in the shed for over a month with no respite, the girlfriend testified to a series of photos she took that portrayed the entire family doing fun things in parks and other places. Although she claimed they were from May and June of 2020, the photos introduced into evidence had no date stamps. Finally, the girlfriend's son, who was fourteen at the time of the trial, testified that the victim and her brother were in the shed for three days.

While living in the shed, the victim and her brother could not use the restroom inside the house and initially had to relieve themselves in the yard. Both the victim and her brother testified that after a few days, appellant ordered them to clean up the yard using dog waste bags and then provided them with a bucket to use as a restroom. There was also conflicting testimony about how much food the victim and her brother received and when, but it appears that when given food, it was in a zip-lock bag consisting of crackers, instant oatmeal, and ramen. While in the shed, the victim also did not have a toothbrush, soap, or any feminine hygiene products while she was menstruating. Even appellant's girlfriend admitted that the victim did not have "pads and things" while she was on her period in the backyard, although she blamed it entirely on appellant's wife. When asked how staying in the shed made her feel, the victim stated, "I don't know. Like nothing."

Appellant now alleges that his conviction was factually insufficient and relies in part on the parental discipline defense. At trial, the military judge recognized that the parental discipline defense generally applies to the use of force in charges involving a physical assault and did not comport with offenses having a specific mens rea; but nevertheless, with the consent of both parties, the military judge gave a modified version of the parental discipline defense instruction for the child endangerment specification.

## LAW AND DISCUSSION

### A. Factual Sufficiency

We review the question of factual sufficiency de novo. *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (internal citation omitted). Because this offense occurred before January 2021, the applicable test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the service court are themselves convinced of appellant's guilt beyond a reasonable doubt." *Id.* (cleaned up) (citation omitted). This court applies "neither a presumption of

3

innocence nor a presumption of guilt" but "must make its own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

In conducting such a factual sufficiency assessment, however, we must still consider "that the trial court saw and heard the witnesses." Article 66(d)(1), UCMJ. *See also United States v. Turner*, 25 M.J. 324, 325 (CMA 1987) (holding that the test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are "convinced of the accused's guilt beyond a reasonable doubt."); *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015), *aff'd on other grounds* 76 M.J. 224 (C.A.A.F. 2017) (holding that "the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue.").

Per the Manual for Courts-Martial, the elements of child endangerment are: (1) a duty to care for the child; (2) who is under the age of 16; and (3) "[t]hat the accused endangered the child's mental or physical health, safety, or welfare through design or culpable negligence." *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, ¶ 59.b. "Design" is defined as "on purpose, intentionally, or according to plan and requires *specific intent* to endanger the child." *Id.* at ¶ 59.c(1) (emphasis added). "Culpable negligence" is defined in part as a negligent act or omission that may include "acts that, when viewed in the light of human experience, might foreseeably result in harm to a child." *Id.* at ¶59.c(2). The *MCM* also states that actual or physical harm is not required but only that the "accused's actions reasonably could have caused physical or mental harm or suffering." *Id.* at ¶59.c(3). Finally, "'[e]ndanger' means to subject one to a reasonable probability of harm." *Id.* at ¶59.c(4).

The definitions in the *MCM* track the holding in *United States v. Plant*, in which the Court of Appeals for the Armed Forces [CAAF] held that in the context of child endangerment, in order to show the accused "endangered" the victim, the government must prove "that the accused's conduct, either through design or culpable negligence, resulted in a reasonable probability that the child would be harmed." 74 M.J. 297, 300 (C.A.A.F. 2015). The CAAF in *Plant* also explained that the threshold to prove culpable negligence was lower than that to prove endangerment, such that the government "establishes culpable negligence if a reasonable person would be aware that the accused's conduct 'might foreseeably result in harm to a child . . . .'" *Id.* n.4.

In this case, regardless of whether the victim spent three days or three months in the shed, there is no dispute that, inter alia, she had no access to a restroom and was forced to use a bucket, she was compelled to sleep in a shed that smelled like

4

gas, and she was not provided with feminine products while menstruating. In addition, the victim testified that having to live in these conditions made her feel "like nothing." Giving due deference to the panel's implicit credibility determination that the government's witnesses were more credible than the defense witnesses, and based on our own review of the record, we are convinced beyond a reasonable doubt that appellant's culpable negligence endangered the victim and therefore affirm the findings as factually sufficient.[3]

### B. The Applicability of the Parental Discipline Defense in a Child Endangerment Case

### 1. Parental Discipline

Although not directly raised by the parties, we requested supplemental briefing on the issue of whether it was appropriate for the military judge to instruct the jury on the parental discipline defense in a child endangerment case that did not involve the actual use of force. As we recently explained in *United States v. Brassfield*, our superior court has long recognized the parental discipline defense in the context of a general intent assault charge involving the use of force. 85 M.J. 523, 525-26 (Army Ct. Crim. App. 2024). For example, in *United States v. Brown*, the Court of Military Appeals [CMA] cited the Model Penal Code for the proposition that the use of force by parents or guardians is justifiable if: (a) the force is used to safeguard or promote the welfare of the minor, including the prevention or punishment of his misconduct; and (b) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation. 26 M.J. 148, 150 (C.M.A. 1988). *See also United States v. Robertson*, 36 M.J. 190, 192 (C.M.A. 1992) (holding that "[t]he second prong of the [parental discipline] test is one of reasonable force."); *United States v. Rivera*, 54 M.J. 489, 491 (C.A.A.F. 2001)

---

[3] The "new" Article 66 factual sufficiency standards, as recently explained in *United States v. Harvey*, 85 M.J. 127 (C.A.A.F. 2024), apply to those cases in which the conduct at issue occurred after 1 January 2021. In this case, the period of time charged for the child endangerment is 15 May 2020 through 30 July 2021, which would appear to overlap the applicability of the "old" and "new" standards. On the other hand, it is clear from the record that the victim went into the shed in May of 2020 and was not there for more than three months, which is still well prior to 1 January 2021. Nevertheless, even if we were to consider factual sufficiency under the "new" test set forth in *Harvey*, after giving the appropriate level of deference to the panel members who saw and heard the witnesses as they testified, and based on our own review and weighing of all the evidence in the record of trial, we are still clearly convinced beyond a reasonable doubt that appellant is guilty.

("Brown established a test of contextual reasonableness in determining when proper parental motive turns to criminal anger, or necessary force becomes a substantial risk of serious bodily harm.").

Consistent with this well-established precedent, in pertinent part the parental discipline defense instruction in the Military Judges Benchbook reads as follows:

> The evidence has raised an issue of whether the accused was imposing corporal punishment as a permissible parental disciplinary measure at the time of the alleged act(s) on (his) (her) child in relation to the offense(s) of (state the alleged offense(s)).
>
> In determining this issue you must consider all the relevant facts and circumstances (including, but not limited to (the amount of force used) (the instrument used) (where upon the body the (force) (instrument) was applied) (the number of times and manner (force) (the instrument) was used) (the age and size of the child) (the size of the accused) (here the military judge may specify other significant evidentiary factors bearing on the issue and indicate the respective contentions of counsel for both sides )).
>
> A parent does not ordinarily commit a criminal offense by inflicting corporal punishment upon a child subject to (his) (her) parental authority because such parental authority includes the right to discipline a child. The corporal punishment must be for the purpose of safeguarding or promoting the welfare of the child, including the prevention or punishment of the child's misconduct, and the force used may not be unreasonable or excessive.
>
> Unreasonable or excessive force is that designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, extreme mental distress, or gross degradation.
>
> If the act(s) of the accused in (striking) (_____) (his) (her) child (was) (were) for the purpose of disciplining the child, and the force used was not unreasonable or excessive as I have defined those terms, the accused is considered to have had legal justification for (his) (her) acts and (he) (she) must be

acquitted. However, if you are satisfied beyond a reasonable doubt that at the time of the accused's act(s), the accused was motivated by other than a parental desire to safeguard or promote the welfare of the child, including the prevention or punishment of misconduct, or, that the force used was unreasonable or excessive, then the act(s) may not be excused as permissible, parental disciplinary measures.

The prosecution's burden of proof to establish the guilt of the accused not only applies to the elements of the offense(s) of ( state the alleged offense(s)), but also to the issue of parental discipline. In order to find the accused guilty of the offense(s) of ( state the alleged offense(s)), you must be convinced beyond a reasonable doubt that the accused's act(s) ((was) (were)) not within the authority of parental discipline as I have defined that term, or that the force used was unreasonable or excessive.

Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, ¶ 5-16 (29 Feb. 2020) (MJBB).

Although he expressed some reservations about its applicability, the military judge worked with the parties to craft a modified parental discipline defense instruction in the context of the child endangerment specification in this case:

MJ: [W]hat we did discuss this morning was that the court sees a disconnect between the model specification and the model Benchbook instruction on parental discipline, which is very much focused on assaults and not other types of parental discipline or corporal punishment, as it sometimes is called. The court, in consultation with the parties, crafted on pages 10 to 11 of the instructions what the court believes is the way to incorporate the parental discipline concept into the child endangerment, which is to focus it on the elements of whether or not the discipline as opposed to force, because there's no really [sic] force in this situation, whether the discipline is unreasonable or excessive in how it relates to the elements of either design or the elements of culpable negligence. And the parties seem to be in agreement that the court had incorporated the concept. Any objection on pages 10 to 11 of the court's instruction with regards to parental discipline?

7

DC: No, sir.

Immediately after giving the standard child endangerment instruction, the military judge further instructed the panel:

> Parental discipline. The evidence has raised an issue of whether the accused was imposing corporal punishment as a permissible parental disciplinary act, as a permissible parental discipline action [sic], in relation to The Specification of Charge II. A parent does not ordinarily commit a criminal offense by inflicting corporal punishment upon a child subject to his parental authority, because such parental authority includes the right to discipline a child. The corporal punishment must be for the purpose of safeguarding or promoting the welfare of the child, including the prevention or punishment of the child's misconduct. And the discipline must not be unreasonable or excessive. Unreasonable or excessive discipline is that designed to cause or known to cause a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, extreme mental distress, or gross degradation.

> I have instructed you that for The Specification of Charge II, the accused must have acted through a design to endanger [victim's] mental health, physical health, and welfare; or for the lesser included offense must have acted through culpable negligence in endangering [victim's] mental health, physical health, and welfare. You may consider whether the accused was exercising reasonable parental discipline in determining whether he endangered [victim's][4] mental health, physical health, and welfare though either design or culpable negligence. In determining this issue, you must consider all the relevant facts and circumstances.

---

[4] Although the transcript reflects the name of the victim's mother, both the written instructions provided to the panel, as well as the recording of the trial, accurately reflect that the military judge properly used the victim's name in this part of the instruction.

*2. Analysis*

As noted above, the panel found appellant guilty only of child endangerment by culpable negligence. Both the greater offense of child endangerment by design and the lesser offense of child endangerment by culpable negligence have a required *mens rea* that is greater than the *mens rea* necessary for general intent crimes.[5] While we recognize that our superior court appears to have only addressed the applicability of the parental discipline defense in the general intent context/use of physical force context, we do not find that to be dispositive of whether such an instruction was appropriate in this case. First, we are unaware of any binding precedent limiting the parental discipline defense to such cases. This makes sense, because although in the abstract a finding of intent to harm a child, either through design or culpable negligence, does not appear compatible with a finding that an accused is acting in the child's best interest, the factfinder is *not* required to first make a finding as to the level of intent *before* considering the parental discipline defense. In other words, if the government fails to prove beyond a reasonable doubt

---

[5] We are aware that in *United States v. Koth,* a prior panel of this court stated that "[c]hild endangerment, like other offenses by culpable negligence, is a general-intent offense reviewed under an objective test." 2017 CCA LEXIS 145 at *4 (Army Ct. Crim. App. 2017) (Summ. Disp.). With all due respect to our brother and sister judges on the *Koth* panel, their language was a bit loose and overbroad. Specifically, there is distinction in the required *mens rea* between a general intent offense and a culpable negligence offense. *Compare United States v. Voorhees*, 79 M.J. 5, 16 (C.A.A.F. 2019) ("[G]eneral intent merely requires [t]he intent to perform [the actus reus] even though the actor does not desire the consequences that result.") (citation omitted) *compare with Plant*, 74 M.J. at 300 (holding that to prove child endangerment by culpable negligence the government must show that "a reasonable person would be aware that the accused's conduct 'might foreseeably result in harm to a child'"). An offense requiring the proof of culpable negligence requires *something more* than just the general intent *mens rea* to do the wrongful act. Specifically, and as applicable here, if child endangerment was merely a general intent crime as described by the panel in *Koth*, the government would only need to prove that appellant did the alleged act, that is, forcing his daughter to live in the backyard without sufficient amenities. But, because the applicable *mens rea* is culpable negligence, the government *also* had to prove that in doing the alleged act, appellant's actions, "when viewed in light of human experience, *might foreseeably result in harm to a child*." On the other hand, we do agree with the *Koth* panel that when reviewing the reasonableness of appellant's actions, the test is objective. *See e.g., United States v. Gibson*, 43 M.J. 343, 346 (C.A.A.F. 1995) (rejecting a subjective test regarding appellant's knowledge of the risk of harm, and applying an objective test whether a reasonable person would have known of the risk).

that the parental discipline defense is not available, the panel would be required to return a verdict of not guilty. This is true regardless of the level or type of force employed by an accused.

To be clear, we are not holding that the defense of parental discipline is *per se* applicable in every case charging child endangerment. Rather, we are finding that because the facts and circumstances of this case were sufficient to raise a parental discipline defense, the military judge did not err in giving such an instruction. Put another way, although there was no evidence that appellant used *actual* force, his command that the victim live in the backyard was akin to the use of constructive force, which in turn raised the issue of whether, in using such force, he acted to "safeguard or promote" the victim's welfare *Cf. People v. Checketts*, 71 Cal.App. 4th 1190, 1194 (1999) ("[R]easonable acts of discipline, including confinement to a particular location for disciplinary purposes such as sending a child to his or her room, would not be false imprisonment, as they would constitute lawful exercise of parental authority"); *Commonwealth v. Yachimowski*, 232 A.3d 861, 867-68 (Pa. Super. 2020) (holding the trial court erred in failing to give a parental discipline defense instruction because "use of force" toward the child includes confinement); *Black's Law Dictionary* (11th ed. 2011) (defining "corporal punishment" as "[p]hysical punishment; punishment that is inflicted on the body (*including imprisonment*)" (emphasis added).

With respect to the actual instruction given, we first commend the military judge for working with counsel to tailor the standard MJBB parental discipline defense instruction to the particular facts in this case. On the other hand, while the revised instruction informed the members that they could "consider whether the accused was exercising reasonable parental discipline," it was silent as to the burden of proof. *See Rivera*, 54 M.J. at 490 ("[T]he Government had the additional burden of refuting beyond a reasonable doubt appellant's defense of parental discipline."); Rule for Courts-Martial 916(b)(1) ("Except as listed in paragraphs (b)(2) and (3) of this rule [lack of mental responsibility and mistake of fact as to age], the prosecution shall have the burden of proving beyond a reasonable doubt that the defense did not exist"); MJBB ¶ 5-16 ("The prosecution's burden of proof to establish the guilt of the accused not only applies to the elements of the offense(s) of (<u>state the alleged offense(s)</u>), but also to the issue of parental discipline. In order to find the accused guilty of the offense(s) of (<u>state the alleged offense(s)</u>), you must be convinced beyond a reasonable doubt that the accused's act(s) ((was) (were)) not within the authority of parental discipline as I have defined that term, or that the force used was unreasonable or excessive.").

Although the military judge erred in not including the appropriate burden of proof in his modified parental discipline instruction, we ultimately need not determine the prejudicial impact of such error because it is both waived and deemed invited. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (holding an

appellant who affirmatively declines to object to a military judge's instructions waives all objections to the instructions); *United States v. Martin*, 75 M.J. 321, 325 (C.A.A.F. 2016) ("The invited error doctrine prevents a party from 'creating error and then taking advantage of a situation of his own making on appeal.'") (citations omitted). In sum: (1) given that defense counsel worked with the military judge to help craft the modified parental discipline defense instruction; (2) defense counsel affirmatively stated he had no objection to the same instruction; and (3) appellant did not raise any objection to the instruction before this court, we need not reach this issue on appeal.

Finally, even if we were to consider the military judge's failure to include the appropriate burden of proof in the modified parental discipline instruction, given the totality of the record in this case, to include all of the reasons we find the case to be factually sufficient, we would find any such error to be harmless. *See United States v. Davis*, 73 M.J. 268, 273 (C.A.A.F. 2014) (holding that the test for erroneous instruction is the "harmless beyond a reasonable doubt standard – i.e. could a rational panel have found Appellant not guilty if they had been instructed properly?") (citations omitted). In other words, even if the military judge instructed the panel that the government needed to prove beyond a reasonable doubt that the parental discipline defense did not apply, that would not have changed the outcome.

## CONCLUSION

Upon consideration of the entire record, the finding of guilty and the sentence are AFFIRMED.[6]

Chief Judge POND and Judge MORRIS concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court

---

[6] We also note that Block 29 (whether DNA processing is required) of the Statement of Trial Results is incorrectly marked "No." In accordance with *United States v. Williams*, 85 M.J. 121, 126-27 (C.A.A.F. 2024), we lack the authority to modify this action. We do, however, note the discrepancy for the record.